**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | |
|---|---|
| **RONNIE SELBY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 2:14-cv-00094** |
| ) | **Judge Sharp/Frensley** |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 16.  Plaintiff has filed an accompanying Memorandum.  Docket No. 17.  Defendant

has filed a Response, arguing that the decision of the Commissioner was supported by substantial

evidence and should be affirmed.  Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on July 8, 2011, with a protective filing

date of June 27, 2011, alleging that he had been disabled since January 29, 1996, due to back

injury with nerve damage, lung problems, and Hepatitis C.  Docket No. 12, Attachment ("TR"),

TR 87-90, 156, 163, 192.  Plaintiff later amended his alleged onset date to December 4, 2008.

TR 255.  Plaintiff's applications were denied both initially (TR 87, 88) and upon reconsideration

(TR 89, 90).  Plaintiff subsequently requested (TR 108) and received (TR 57-86) a hearing.

Plaintiff's hearing was conducted on June 11, 2013, by Administrative Law Judge ("ALJ") Mark

Siegel.  TR 57.  Plaintiff and vocational expert ("VE"), Ernest Brewer, appeared and testified.

*Id.*

On July 19, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations.  TR 34-36.

Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the
   Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity
   since December 4, 2008, the amended alleged onset date (20
   CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar
   degenerative disc disease; hypertension; chronic obstructive
   pulmonary disease; borderline intellectual functioning; learning
   disorder; depressive disorder; post-traumatic stress disorder;
   alcohol dependence; and generalized anxiety disorder (20 CFR
   404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of
   impairments that meets or medically equals the severity of one
   of the listed impairments in 20 CFR Part 404, Subpart P,
   Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
   416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the
   undersigned finds that the claimant has the residual functional
   capacity to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b), except the claimant can only occasionally perform such postural activities as climbing, balancing, stooping, crouching, crawling and kneeling. The claimant should not have concentrated exposure to pulmonary irritants. The claimant can understand, remember, and carry out simple and 1 to 3 step detailed instructions, but he is better suited working in an object-focused setting with things rather than people. The claimant reads at a fifth grade level and performs math at a fourth grade level.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 27, 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the *amended* alleged disability onset date of December 4, 2008 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 1996, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 39-50 (emphasis in original).

On August 2, 2013, Plaintiff timely filed a request for review of the hearing decision. TR 33. On September 9, 2014, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. **REVIEW OF THE RECORD**

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. **CONCLUSIONS OF LAW**

### A. **Standards of Review**

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement of Errors

Plaintiff contends that the ALJ erred by: (1) failing to properly consider and weigh the opinion evidence; (2) finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible, specifically failing to appropriately address Plaintiff's complaints of pain and mental restrictions; (3) improperly determining that Plaintiff has the residual functional capacity to perform light work, disregarding the limiting effects of Plaintiff's pain and the Global Assessment of Functioning ("GAF") scores assigned by

Plaintiff's mental health care provider.  Docket No. 17, p. 17-22.  Accordingly, Plaintiff has moved the Court for a judgment based upon the administrative record.  Docket No. 16.[2]

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. **The ALJ's Consideration of the Opinion Evidence**

Plaintiff maintains that the ALJ did not properly consider and weigh the opinion evidence in this matter.  Docket No. 17, p. 19-20.  Plaintiff specifically argues that the ALJ did not properly evaluate the opinion of his treating mental health care provider, Holly Robertson, APRN-BC.  *Id.* at 19.  Plaintiff argues that:

---

[2] Although neither Plaintiff's Motion nor his Memorandum requests that the Commissioner's decision be reversed, or in the alternative, remanded (*see* Docket Nos. 16, 17), those are the only forms of relief available in the instant action to Plaintiff.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned will therefore consider Plaintiff's Motion to be requesting such relief.

The ALJ tries to diminish the significance of two years of treatment at Life Care by Holly Robertson because there is a reference to a referral to Life Care by claimant's attorney. The ALJ fails to note that Holly Robertson was the provider who changed facilities. The ALJ seems to only credit Holly Robertson's work at PMHC and not Life Care and also the ALJ indicates that [Plaintiff] returned to PMHC just a month before the hearing. (Tr. 8). The last records from Life Care are mistakenly identified in the index of the record as records from Volunteer Behavioral Health Care Systems. (Tr. 636-647). In fact, [Plaintiff] had consistent treatment from Holly Robertson during the period in review, from 2009 through 2010 and 2011 through 2013.

*Id.*

Plaintiff further argues that the ALJ should have given more consideration and weight to the opinion of consultative examiner Melvin Blevins, M.D., who "found significant restrictions that will not allow even a full range of sedentary work." *Id.* at 20. Plaintiff contends that the ALJ should have given less weight to the opinion of consultative examiner Donita Keown, M.D., because "Dr. Keown's opinion of [Plaintiff's] restrictions was given without the benefit of the x-rays of September 13, 2011, showing severe disc disease," and "neither the consultative doctor nor the reviewing doctor had the benefit of the records of [Plaintiff's] hypertension and his treatment for pain in 2012." *Id.*

Defendant responds that "the ALJ properly considered all of the relevant medical opinion evidence pertaining to Plaintiff's mental health." Docket No. 18, p. 9, *citing* TR 41, 42, 44-45, 48-49. Regarding the opinion of Nurse Robertson, Defendant argues that she is an "other" or "not acceptable" source under the Regulations, and therefore cannot offer a "medical opinion." *Id.* at 10-11. Defendant contends that the ALJ summarized Plaintiff's treatment and specifically noted the treatment at Life Care in 2009 and 2011 through 2013, and thus was familiar with Plaintiff's treatment history with Nurse Robertson. *Id.* at 12, *citing* TR 44.

Regarding other opinion evidence related to Plaintiff's mental health, Defendant argues that the ALJ properly considered and weighed the opinions of consultative examiner Dr. Linda Blazina and State agency non-examining psychologist Robert Paul, Ph.D. *Id*. at 14, 15, *citing* TR 48, 292-309.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion . . . .

> (3) Supportability. The more a medical source presents
>     relevant evidence to support an opinion, particularly
>     medical signs and laboratory findings, the more weight
>     we will give that opinion. The better an explanation a
>     source provides for an opinion, the more weight we will
>     give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion
>     is with the record as a whole, the more weight we will
>     give to that opinion.
>
> (5) Specialization. We generally give more weight to the
>     opinion of a specialist about medical issues related to
>     his or her area of specialty than to the opinion of a
>     source who is not a specialist.
>                                              . . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.*, 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the opinion evidence and weight accorded thereto as follows:

> The claimant had a private consultative psychological examination in October 2012 with Jerell Killian, MS (Exhibit 17F). The claimant's representative requested this intellectual functioning because of the claimant's history of special education and limited education. On the WAIS-IV test, the claimant obtained a Full Scale IQ score of 69, which is within the range of listing 12.05C. The examiner noted the claimant's testing scores on this and the WRAT-4 revealed a range of functioning with most scores in the borderline range. The claimant also stated it took him five tries to obtain a commercial driving license. The examiner was not able to determine why activities involving processing speed were so difficult for the claimant. Mr. Killian's diagnostic impression was mild mental retardation.[4]

---

[4] Mr. Killian is not an acceptable medical source under 20 CFR 404.1513(a) and 416.913a. Under Social Security Ruling 06-03p, information from sources other than acceptable medical sources cannot establish the existence of a medically determinable impairment. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. Mr. Killian has no such special knowledge of the claimant, as he only conducted a one-time examination.

In terms of anxiety and depression, the claimant received some mental health treatment at Plateau in 2009 and on January 2, 2010. After no treatment for over three years, he resumed treatment there on May 13, 2013, a month before his hearing (Exhibit 25F and 26F). The claimant received some treatment at Life Care Family Services, beginning in 2011 after he filed his application on the reference of his disability representative (Exhibit 10F and 1F). He has reported he has a lifetime history of anxiety, although he spent his most recent two year [*sic*] working as a blaster. He takes prescription medication such as Zoloft.

The claimant attended a consultative physical exam with Dr. Donita Keown, MD on September 13, 2011 (Exhibit 2F). The claimant complained of back injury, lung problems, and hepatitis C. The claimant reported that he had back surgery in the mid-1990s. At the examination, he carried a cane, but did not use it. He said he had used a cane since his surgery in the mid-90s, yet he also admitted he worked in drilling and blasting up until three years ago, which is not fully credible. The claimant would not answer more questions about his cane, and changed the topic when the examiner asked. When the examiner asked about his lung problem, the claimant began coughing dramatically. He stated he was short-winded "all the time". He stated he was told he has the lungs of an 80-year old. However, he still smokes a pack per day. He reported he suffered hepatitis C since two years prior, but he had not received treatment for hepatitis C because he had "no money". He complained of occasional right quadrant pain, but he had had no hospitalizations. The claimant could not remember the last time he had been treated by any treating physicians. He reported occasional alcohol consumption. He reported working in drilling and blasting for 15 years, ending in November 2008.

Upon examination, the consultative physician Dr. Keown noted the claimant presented with pain behaviors and symptom magnification. Moreover, the claimant presented with suboptimal participation in the collection of information for the medical history. In lungs, he had no wheeze, rales or rhonchi; he had no increased AP diameter or use of accessory muscles to respire. His heart showed regular rhythm and rate with normal S1 and S1 without S3 or S4; he had no murmurs, rubs or gallops. Pulses were +2 in all four limbs with no edema.

He did not have hepatosplenomegaly or ascites. He had full range of motion in his hands, wrists, elbows, shoulders, hips, knees and ankles. He showed full range of motion in his cervical spine. He had a faded incision scar in lumbar spine. He showed some range of motion issues in thoracolumbar spine, yet straight leg raise maneuvers were negative both seated and supine. He showed 5/5 strength in his hands, arms, and legs. He could perform a straightaway walk unremarkably without using an assistive device. The claimant was never inordinately short of air at any time during the evaluation. An x-ray of chest was normal. X-rays of lumbar spine showed degenerative disc disease at L5-S1; there are mild degenerative changes involving remainder of the spine.

As noted above, the claimant attended a consultative physical examination with Dr. Melvin Blevins, MD in June 2012 upon the advice and counsel of the claimant's disability representative. The claimant's representative arranged the examination (Exhibit 12F). Dr. Blevins noted the claimant's degenerative disc disease since a back injury in 1996 and the claimant's other impairments. The examiner found decreased breath sounds and scattered rhonchi. Straight leg raise was positive at 30 degrees on left and negative on right. Grip was 4/4 bilaterally; upper extremity reflexes are 4/4 bilaterally. The claimant presented with a limp. Based on what the claimant told him, Dr. Blevins felt the claimant suffered ASHD (arteriosclerotic heart disease); it was Dr. Blevins' primary diagnosis; yet, as discussed above, the medical evidence of record does not support this.

The claimant attended a psychological consultative examination with Dr. Linda Blazina, PhD, in September 2011 (Exhibit 3F). At the examination, the claimant alleged disability based on "back, lungs and anxiety". He was alert and cooperative with good eye contact. He demonstrated mild psychomotor restlessness. His mood was depressed and his affect congruent. Speech was slow but fluent. Receptive and expressive language skills were within normal range. He rambled at times, but there was no evidence he has any impairment in reality testing. He denied suicide or homicide ideation. He stated he had felt anxious since childhood. His memory functioning appeared adequate. His attention and concentration were below average. He was very vague about substance dependence problems until he finally stated, "I am a binge drinker and drink every two or three months now." He

reported receiving mental health treatment two years prior at Plateau. The examiner felt the claimant had intellectual functioning in the borderline to low range. He was not taking any medication at the time of the exam. He said he sometimes had problems putting on shoes and socks due to back pain, but he could complete all other grooming tasks. He said he did not drive because he was too nervous. He did not like to go out in public. He did not do any chores or cooking; his wife did these. He watched television and talked with his brother on the telephone occasionally. The examiner diagnosed generalized anxiety disorder; depressive disorder, NOS; learning disorder, NOS; and alcohol dependence. The examiner had rule out diagnoses of borderline intellectual functioning and personality disorder.

. . .

As for the *opinion evidence*, the undersigned gives most weight to the opinions from state agency medical consultants. The undersigned gives some weight to opinions from consultative examiners. The overall well-supported medical opinion evidence supports the residual functional capacity.

Dr. Keown, a consultative physician in September 2011, found the claimant could sit 8 hours in an 8-hour day (2F). He could walk or stand 8 hours in an 8-hour day. He could perform lifting 30-40 pounds occasionally and 15-20 pounds frequently. There was no evidence to support reliance on a handheld device (cane) at all times. The undersigned gives this opinion some weight because this physician examined the claimant personally. In this case, however, the ability of the State agency physician to examine the entire file actually resulted in a more restrictive functional capacity than Dr. Keown recommended.

Dr. Blevins, MD, a consultative physician who examined the claimant at the behest of the claimant's representative, found the claimant suffers very serious limitations (Exhibit 12F). He could lift and carry 20 pounds occasionally and less than 10 pounds frequently. He could stand and walk less than 2 hours in an 8-hour workday and sit about 4 hours in an 8-hour workday. He was limited in use of his legs due to pain. His pain was frequently severe; he was incapable of even low stress jobs. This doctor further found the claimant's legs should be raised after prolonged sitting. The claimant can occasionally

climb and balance; he can never kneel, crouch or crawl. He should avoid moderate exposure to pulmonary irritants, temperature extremes, noise, vibration, and hazards. The undersigned gives little weight to this opinion because this doctor bases his conclusions solely on the claimant's subjective reports, and these reports have been found not to be fully credible, for the reasons discussed above.

Dr. Blazina, PhD, a consultative psychologist (3F) in September 2011 found the claimant did not have impairment in ability to understand and remember short simple instructions. His ability to understand and remember complex detailed instructions was moderately impaired. Ability to maintain concentration and attention and social interaction ability appeared moderately impaired. Ability to adapt to change in a work routine and tolerate workplace stress was moderately impaired. The undersigned gives this opinion some weight because this psychologist interviewed the claimant personally. The residual functional capacity accommodates these limitations.

Medical staff at Volunteer Behavioral assessed the claimant's functioning in a form assessment in April 2009 (Exhibit 25F). The assessment shows moderate limitation in most areas, with marked limitation in social functioning. The undersigned gives this opinion less weight for several reasons. First, the form was completed two years before the claimant filed his application, and the overall record shows the claimant's condition improved with time. His mental condition seemed to improve as shown by notes in 2011 and 2012 at Life Care. He received a Global Assessment of Functioning of 45 in 2009, but a GAF of 50 and 55-60 in 2011. Moreover, the record is unclear as to the professional status of the individual who completed this form, and the form does not provide substantial objective information to support its conclusions.

Dr. Chaudhuri, MD, a state agency physician, found the claimant could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds (Exhibit 4F). The claimant could stand and walk about six hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. The claimant can occasionally climb, balance, stoop, crouch, kneel and crawl. The claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, gases, dust, poor ventilation, etc. The undersigned gives this opinion considerable weight

because it is consistent with the record as a whole. The state agency source noted the claimant did not have shortness of breath problems during the physical consultative exam. He exhibited pain behaviors and symptoms magnification.

Dr. Robert Paul, PhD, a state agency psychologist, found the claimant can understand and remember for [sic] simple and some detailed 1to 3 [sic] step tasks and instructions (Exhibit 6F and 5F). The claimant can sustain adequate persistence and pace across normal workday and workweek. The claimant can get along with the general public, coworkers and supervisors; however, he appears better suited for thing versus people-oriented type work in object-focused job setting [sic]. Claimant can adapt and respond to changes in a routine work setting given reasonable support. The claimant can make and set simple work-related plans and goals independently, but he may have difficulty with more complex decision-making. The undersigned gives this opinion considerable weight because it is consistent with the record as a whole. For instance, this consultant noted the claimant had not had mental health care in the past two years (Exhibit 3F). There were [sic] no mention of mental impairments in the claimant's original disability report.

Due to the inability to find the claimant's allegations to be fully credible, the undersigned must rely on the state agency assessments at 4F and 6F, which are more consistent with the record as a whole and which are given considerable weight. Moreover, at reconsideration, state agency consultants concurred with these assessments (Exhibits 8F and 9F). These opinions receive some weight insofar as they support the residual functional capacity because these consultants are experts in the field of disability.

TR 41, 44-49, *citing* TR 265-309, 337-61, 378-85, 410-12, 514-542 (emphasis in the original, footnote in the original).

Although Nurse Robertson had a treatment relationship with Plaintiff that should be considered by the ALJ, under the Regulations, she is not an acceptable source who can provide a medical opinion. *See* 20 CFR § 404.1513(d). Regarding "other" sources, the Regulations provide that the ALJ may properly:

use evidence from other sources to show the severity of your
impairment(s) and how it affects your ability to work.  Other
sources include, but are not limited to –

(1) Medical Sources not listed in paragraph (a) of this
section (for example, nurse-practitioners, physicians'
assistants, naturopaths, chiropractors, audiologists, and
therapists).

*Id.*  While the ALJ does not refer to Nurse Robertson by name, her notes are contained within the

records from Life Care that are cited by the ALJ in his decision.  TR 48.  Although Plaintiff

argues that "[t]he last records from Life Care are mistakenly identified in the index of the record

as records from Volunteer Behavioral Health Systems. (Tr. 636-647)" (Docket No. 17, p. 19),

those page numbers are actually identified in the index as "Medical Evidence of Record, dated

05/13/2013 to 06/12/2013, from Life Care Family Services."  *See* TR, Court Transcript Index.

Regardless, the ALJ demonstrated his familiarity with the records from Life Care by citing to

Exhibits 25F and 26F, as described above, and by acknowledging that Plaintiff resumed

treatment on May 13, 2013, a reference to Plaintiff's treatment at Life Care, beginning on May

13, 2013, that is documented in the record within the range of pages that Plaintiff cites in his

argument.  *See, e.g.*, TR 638.  Further, Plaintiff's argument that the ALJ failed to appropriately

consider Plaintiff's treatment at Life Care because the ALJ believed that Plaintiff "received some

treatment at Life Care Family Services . . . on the reference of his disability representative" is not

persuasive, because, as cited above, the ALJ did consider and discuss Plaintiff's treatment at Life

Care.  As cited above, the ALJ considered not only the opinions related to Plaintiff's treatment at

Life Care, but every opinion included in Plaintiff's record.

Because Nurse Robertson is an "other source," the ALJ was not required to give her

opinion any particular weight.  As shown above, the ALJ properly considered Nurse Robertson's

18

notes, including those notes from her treatment of Plaintiff at Life Care, when evaluating the record and making his determinations, and the Regulations do not require more.

## 2. **Credibility and Subjective Complaints**

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints "of both pain and of [Plaintiff's] mental restrictions." Docket No. 17, p. 18. Plaintiff argues that instead of properly considering his limitations, the ALJ merely stated that he had considered Plaintiff's subjective limitations in accordance with the Regulations and then listed the factors for evaluating symptoms that are set out in the Regulations, in violation of SSR 96-7p. *Id.* at 17-18. Plaintiff further argues that the ALJ discredited Plaintiff's testimony without a close reading of the record. *Id.*

Defendant responds that the ALJ's evaluation of Plaintiff's credibility was consistent with the SSA's regulations and policies and is supported by substantial evidence. Docket No. 18, p. 4. In response to Plaintiff's argument that the ALJ made conclusory statements with no analysis, Defendant argues that the ALJ discussed and based his finding on multiple factors, including Plaintiff's "inconsistent testimony and statements, exaggerations, symptom magnifications at a consultative examination, continuing smoking despite alleging breathing problems, and the lack of support in the medical record." *Id.* at 5, *citing* TR 46-47. Specifically, Defendant points to the ALJ's consideration of Plaintiff's inconsistent use of a cane, continued smoking, "inconsistencies in Plaintiff's description of his use of alcohol and marijuana," inconsistent reports of symptoms, and work as a blaster despite allegations of anxiety and post-traumatic stress. *Id.* at 7-8.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot
> alone support a finding of disability . . . . [T]here must be evidence of an
> underlying medical condition and (1) there must be objective medical
> evidence to confirm the severity of the alleged pain arising from the
> condition or (2) the objectively determined medical condition must be of a
> severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S.

Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("statements about your pain or other symptoms will not alone establish that you are disabled . . .

."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if

the subjective allegations, the ALJ's personal observations, and the objective medical evidence

contradict each other.").  Moreover, "[a]llegations of pain . . . do not constitute a disability,

unless the pain is of such a debilitating degree that it prevents an individual from participating in

substantial gainful employment."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,

1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage, and effect of medication; and the other

treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994),

*construing* 20 CFR § 404.1529(c)(2).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible.  *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th

Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

TR 46.

The ALJ explained his rationale for so finding as follows:

> Because a claimant's subjective complaints of impairment-related symptoms can sometimes suggest a different level of severity than can be shown by the objective medical evidence alone, 20 CFR §404.1529(c) and §416.929(c) describe the kinds of *evidence* the undersigned must consider, *in addition to the objective medical evidence* when assessing the *credibility* of the claimant's statements. These credibility factors include: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) the factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board) and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p). In sum, the claimant's subjective allegations of completely disabling symptoms do not find complete support when considering these credibility factors.
>
> The claimant's subjective allegations are not entirely credible. The claimant states he has suffered back pain since 90's [*sic*] and he has been anxious since childhood (3F). However, the claimant has worked at substantial levels since the onset of these issues. His work required both exertional and skill levels which would call his

subjection [*sic*] allegations into question.  It is particularly unlikely that someone with disabling anxiety could work for two years as a dynamite blaster.

The claimant stated at the examination with Dr. Keown that he is short-winded "all the time" (Exhibit 2F).  This statement was not verified by objective observation by Dr. Keown at the examination or by the undersigned at the claimant's hearing.  Second, this statement is vague and extreme, suggesting symptoms magnification.  Moreover, the claimant continues to smoke about one pack of cigarettes per day, despite this alleged breathing difficulty.  At one point he stated he has "no money" for hepatitis C treatment, yet he could afford one pack of cigarettes per day at that same time, which suggests that his desire for cigarettes is more important than his breathing problems or hepatitis symptoms.

The claimant ambulated with a limp at psychological consultative exam [*sic*], but this is not consistent with the consultative physical examination, from which Dr. Keown reported he could walk fine without a cane (Exhibits 2F and 3F).  In addition, Dr. Keown stated that the claimant engaged in pain behaviors and symptoms magnification.

The claimant testified at the hearing that he had not used alcohol in the past five years.  At a consultative examination in September 2011, however, he reported drinking alcohol occasionally at that time, then admitted to binge drinking (2F).  Moreover, at the physical examination, he stated he did not do drugs.  Yet at the hearing, he had used marijuana in the past eight months.  The record shows he rarely or never discusses drugs or alcohol with his mental health providers, which limits their ability to evaluate his condition fully.

As noted above, the undersigned does not believe that an individual with the kind of anxiety and post-traumatic stress disorder that the claimant alleges would be able to work as a successful blaster for two years.  His stories of sending debris multiple times through a McDonald's restaurant during business hours and through people's homes are also not fully credible.  One such event would likely have made the regional or national news.

Moreover, the claimant has no medical records since the 1990's until six months after he stopped working.  Also, as noted above, the claimant's reports of heart problems and seizures are not supported by the record.

TR 46-47, *citing* TR 270-81 (emphasis in original).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 46-49. As cited above, the ALJ thoroughly considered and discussed the opinion evidence, including Plaintiff's evaluations for pain and mental impairments. TR 41, 45-49. Although the ALJ did indeed list the factors that the Regulations specify for the evaluation of a claimant's subjective allegations, the ALJ did not merely list the factors without providing analysis. TR 46. Instead, the ALJ continued by explaining why he found Plaintiff's statements to be not entirely credible, with particularity and reference to the record. *Id.* The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters*, 127 F.3d at 531; *Kirk*, 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters*, 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley*, 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th

Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony and the reasons must be supported by the record. *See Felisky*, 35 F.3d at 1036; *see King*, 742 F.2d at 975).

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." TR 46. In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. <u>Residual Functional Capacity ("RFC"), Limiting Effects of Pain, and GAF Scores</u>

Plaintiff maintains that the ALJ erred in finding that Plaintiff can perform light work, in finding that Plaintiff's pain is not significantly limiting, and in failing to appropriately consider the GAF scores assigned by Plaintiff's mental health care provider. Docket No. 17, p. 18-22. Citing the restrictions found by Dr. Blevins, which Plaintiff asserts are supported by objective evidence in the record, Plaintiff contends that he "cannot perform a full range of sedentary work." *Id.* at 20. Plaintiff argues that the ALJ should not have relied on the opinions of Dr. Keown and "the reviewing physician," as Dr. Keown gave his opinion without having seen X-rays of Plaintiff taken on September 13, 2011, and the reviewing physician gave an opinion without having seen X-rays of Plaintiff that were taken on November 20, 2011, which Plaintiff contends "showed in more detail the severity of [Plaintiff's] degenerative disc disease." *Id.* Further, Plaintiff argues that "[n]either the consultative doctor nor the reviewing doctor had the

benefit of the records of [Plaintiff's] hypertension and his treatment for pain in 2012." *Id.*

Plaintiff contends that he therefore satisfies the first prong of the test for analyzing a claimant's

assertions of pain laid out by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*,

801 F.2d 847, 853 (6th Cir. 1986). *Id.* at 21. Regarding the second prong of the "*Duncan* test,"

Plaintiff argues that he could meet it by satisfying one of the alternative parts, but that the ALJ

"did not fully discuss the relevant factors or apply them to the facts of this case." *Id.* at 21-22.

Plaintiff contends that "[t]he factors set out in 20 C.F.R. section 416.929(c)(3) support

[Plaintiff's] allegations of disabling pain." *Id.* at 22.

Defendant does not specifically address Plaintiff's argument that the ALJ erred in finding

that Plaintiff can perform light work, but does assert that "[s]ubstantial evidence supports the

ALJ's decision (Tr. 34-56)." Docket No. 18, p. 3. Regarding Plaintiff's argument that X-rays

taken in 2011 showed severe degenerative disc disease, Defendant responds that the ALJ

acknowledged that X-rays of Plaintiff's spine show abnormalities, and also considered that Dr.

Keown had described inconsistencies including symptom magnification. *Id.* at 6, *citing* TR 45,

270-72.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual

retains the capacity for sustained performance of the physical-mental requirements of jobs." 20

CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in

determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the
> nature and extent of your physical limitations and then
> determine your residual functional capacity for work activity
> on a regular and continuing basis. A limited ability to perform
> certain physical demands of work activity, such as sitting,
> standing, walking, lifting, carrying, pushing, pulling, or other
> physical functions (including manipulative or postural

25

functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light work with additional limitations. TR 43. The ALJ explained:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can only occasionally perform such postural activities as climbing, balancing, stooping, crouching, crawling and kneeling. The claimant should not have concentrated exposure to pulmonary irritants. The claimant can understand, remember, and carry out simple and 1 to 3 step detailed instructions, but he is better suited working in an object-focused setting with things rather than people. The claimant reads at a fifth grade level and performs math at a fourth grade level.

*Id.*

In so finding, the ALJ considered the opinion evidence, as discussed and cited above, including the opinions of Dr. Keown and the State agency reviewing physicians. TR 41, 45-49. The ALJ also considered the medical evidence of record. TR 44-46. Specifically, the ALJ stated:

> In terms of the claimant's alleged back impairment, he reports he has suffered back pain since an injury in 1996. He nonetheless was able to work very successfully for the next two decades. Lumbar x-rays in November 2011 show "mild" changes at the lumbosacral junction. There were minimal changes at acetabulum (Exhibit 7F). There were osteophytes along the thoracic and lumbar spine. X-rays in September 2011 showed degenerative disc disease (Exhibit 2F).

TR 44, *citing* TR 270-75, 310-36.

The ALJ also considered Plaintiff's activities of daily living:

In activities of daily living, the claimant has mild restriction. As noted above, he was able to work and support himself for decades. He cares for his own toileting and personal needs. He does not need reminders to take medications. He is able to count money and use checkbook [*sic*]. He watches television (Exhibit 5F). The level of limitation found in this domain is fully consistent with the assessment from the state agency psychologist (Exhibit 5F).

In social functioning, the claimant has moderate difficulties. The claimant alleges he does not like to go out in public; he does not like to go shopping. However, he lives successfully with his wife. He talks with his brother on the telephone. He interacted within normal limits at multiple consultative exams and at the hearing. The level of limitation found in this domain is fully consistent with the assessment from the state agency psychologist (Exhibit 5F).

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant likely suffers below average or possibly borderline intellectual functioning, and this likely cause [*sic*] moderate restriction in this domain. However, at a psychological consultative exam, memory functioning was adequate (Exhibit 3F). He has been able to function for decades in a work setting, including at a highly skilled level. The claimant was able to follow lines of questioning at the hearing. The level of limitation found in this domain is fully consistent with the assessment from the state agency psychologist (Exhibit 5F).

TR 42, *citing* TR 276-81, 292-305.

The ALJ also considered Plaintiff's testimony, stating:

The claimant testified that he had heart trouble in 2004. There is no evidence of this in the record, and no evidence of cardiac treatment. Following an echocardiogram from March 2012 which was largely normal, the claimant reported to private consultative examiner Dr. Melvin Blevins in June 2012 that he had or may have had arteriosclerotic heart disease (ASHD) (Exhibit 12F). However, the treatment notes show the condition of the claimant's heart was examined at Cookeville Regional Medical Center in July 2012 when he reported chest pain (Exhibit 13F). All testing, including a catheterization, a stress test, and an echocardiogram were normal. The claimant

does not appear to have sought any subsequent cardiac testing or treatment. (Exhibits 12F, 13F and 27F). Treatment notes at Summit in August 2012 show "no history of ASHD" (Exhibit 19F, p. 12). In short, the objective evidence does not show heart disease.

. . .

The claimant testified at the hearing. He lives with his wife, who works part-time. The claimant is forty-five years old. He has a ninth grade education and took special education classes in seventh and eighth grades. He last worked in November 2008. The claimant worked in most years from 1988 to 2008 as a driller or blaster. He has had a commercial driver's license in the past. He had to take a test for the blaster job, but he said he had help, which he explained to mean he took a class beforehand where they went over the material which was on test [*sic*]. He alleges back pain. He has hypertension and hepatitis C. He goes to a center for treatment for anxiety. He does not do many household chores. He does not like to be around people. He stated he had not used alcohol in the past five years. He last used marijuana around Christmas 2012.

TR 40, 44, *citing* TR 378-98, 450, 543-628.

Plaintiff also argues that the ALJ failed to give appropriate consideration to his GAF score of 50, and failed to credit that his GAF score was assigned by Nurse Robertson, one of Plaintiff's mental health care providers. Docket No. 17, p. 18-19. Plaintiff contends that "[t]he ALJ indicates he does not know who assigned the GAF score but the score in 2012 was clearly signed by Holly Robertson. (Tr. 381)." *Id.* at 19.

Defendant argues that the ALJ merely stated that the professional status of the person completing a form assessment for Plaintiff in 2009 was unclear, and that this statement is correct, "as the form lists no professional status for the rater, Nathan Miller (Tr. 517)." *Id.* Regarding this form, Defendant argues that:

> Concerning this form, it was not particularly relevant for the
> reasons set forth by the ALJ.  It was apparently not completed
> by a doctor, it lacked supporting objective information, and, as
> the ALJ indicated, it was inconsistent with subsequent
> treatment records which showed improvement over time (Tr.
> 48, citing Life Care records, e.g. Tr. 365).  In June 2012, Ms.
> Robertson had noted that Plaintiff had improved depression
> (Tr. 365).

*Id.* at 13.  Defendant contends that Plaintiff is incorrect in asserting that the ALJ was referring

here to a GAF provided by Nurse Robertson.  *Id.* at 12-13.  Defendant further contends that in

any event, "a GAF score is not determinative to the issue of disability," but rather "can be

considered as opinion evidence, but is never dispositive of impairment severity."  *Id.*  Defendant

asserts that there are "many problems associated with GAF ratings as there is no way to

standardize measurement and evaluation."  *Id.*  Even if the GAF scores assessed by Nurse

Robertson were to be considered as part of her opinions, Defendant argues that as her opinions

are from an "other source," they are not "medical opinions," and were properly considered by the

ALJ.  *Id.* at 13-14.

As an initial matter, GAF scores are not determinative of disability for Social Security

purposes.  In fact, the Social Security Administration has declined to endorse the GAF scale for

"use in the Social Security and SSI disability programs," and has indicated that GAF scores have

no "direct correlation to the severity requirements in [the] mental disorders listings."  *See*

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.

Reg. 50746-01 (August 21, 2000).  Although "the GAF is a test used by mental health

practitioners with respect to planning treatment and tracking the clinical progress of an

individual in global terms, the ALJ is not bound to consider its results at the exclusion of other

medically reliable evidence."  *Presley v. Colvin*, 2014 U.S. Dist. LEXIS 180027 (M.D. Tenn.

2014) at 38, *citing Alvarez v. Barnhart*, 2002 U.S. Dist. LEXIS 21678, 2002 WL 31466411, at

*8 (W.D. Tex. October 2, 2002). Nor is a GAF score determinative of an individual's RFC

assessment. *Id.* at 38-39. ("A GAF score is not a rating typically relied upon with respect to

assessing an individual's RFC under the Act."); *see also Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential in assessing RFC).

Regarding the issue of whether the ALJ considered GAF scores assigned by Nurse

Robertson, the ALJ discussed more than one item in the record that involved GAF scores,

including "a form assessment in April 2009 (Exhibit 25F)." TR 48. Exhibit 25F does contain a

form assessment dated April 23, 2009, that appears to have been completed by "rater" Nathan

Miller (Mr. Miller's professional information is not provided on the form, although Defendant

correctly notes that Mr. Miller is identified later in the record as having an M.A. degree). *See* TR

514-17, 530. As discussed above, the ALJ explained his reasons for giving this form assessment

less weight: the form was completed two years before Plaintiff filed his application, the overall

record shows Plaintiff's conditions improved over time, the ALJ gave more weight to the

opinion of State agency psychologist Dr. Paul, because it was consistent with the record as a

whole and because the state agency consultants concurred with Dr. Paul's opinion upon

reconsideration, the ALJ did not find Plaintiff's allegations to be fully credible and "the record is

unclear as to the professional status of the individual who completed this form." TR 48-49.

Thus, the ALJ appropriately considered and evaluated this part of the record, explaining his

reasons for giving it less weight, as cited above. TR 48.

There is, however, another evaluation of Plaintiff in the record, also dated April 23, 2009,

which is signed by Nurse Robertson (TR 521-22), and this appears to be the evaluation to which

Plaintiff is referring. Docket No. 17, p. 19. This evaluation is also part of Exhibit 25F. *See* TR

521-22. As discussed above, the ALJ cited Exhibit 25F in his discussion of Plaintiff's treatment history, demonstrating that he was aware of this record and considered it in making his determinations. TR 48.

Plaintiff's claim that "[t]he ALJ indicates he does not know who assigned the GAF score but the score in 2012 was clearly signed by Holly Robertson. (Tr. 381)," cites to a page in the record that is part of a Medical Source Statement completed by Dr. Blevins, not a note by Nurse Robertson. *See* TR 381. The record does contain a note from Nurse Robertson from 2012 in which she assigned a GAF score. TR 362-77. As discussed above, the ALJ demonstrated awareness of Nurse Robertson's notes and her care for Plaintiff over the years by citing to "notes in 2011 and 2012 at Life Care." TR 48. The ALJ also noted that Plaintiff "received a Global Assessment of Functioning of 45 in 2009, but a GAF of 50 and 55-60 in 2011." TR 48.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's degenerative disc disease, X-rays of Plaintiff's lumbar spine, reports of pain, and GAF scores, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 43. As cited above, the ALJ assessed Plaintiff's statements regarding his subjective complaints, and found them to not be fully credible, for the reasons previously discussed. TR 46-47. Regarding Plaintiff's argument that Dr. Keown and the reviewing physician did not have access to records regarding Plaintiff's hypertension or pain treatment, as addressed above, the ALJ explained why he gave more weight to the opinions of these physicians. *See* TR 47-48. Specifically, the ALJ gave Dr. Keown's opinion some weight because Dr. Keown examined Plaintiff personally, but noted that "[i]n this case, however, the ability of the State agency physician to examine the entire file actually resulted in a more restrictive residual functional capacity than Dr. Keown recommended," demonstrating that the

ALJ was aware that Dr. Keown did not have access to the full file, and therefore relied more on the opinion of the State agency physician. TR 47. The ALJ properly evaluated the evidence of record, including the opinion evidence, the medical evidence, Plaintiff's activities of daily living, and Plaintiff's testimony in reaching this RFC determination, and the Regulations do not require more.

## IV. <u>RECOMMENDATION</u>

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge